Affirmed and Memorandum Opinion filed October 19, 2004









Affirmed and Memorandum Opinion filed October 19,
2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01087-CV

____________

____________

 

ROBERT E.
McCLUSKEY, JR., Individually, as Beneficiary, as Heir and as Independent
Executor of the ESTATE OF ROBERT E. McCLUSKEY, SR., Deceased; ROSE LEE
McCLUSKEY, Individually, and as Heir of the Estate of Robert E. McCluskey, Sr.,
Deceased;
GARY STEVEN McCLUSKEY, Individually, as Beneficiary, and as Heir of the Estate
of Robert McCluskey, Sr., Deceased; and KAREN MAE MARTIN, Individually, as
Beneficiary, and as Heir of the Estate of Robert E. McCluskey, Sr., Deceased,
Appellants

 

V.

 

RANDALL=S
FOOD MARKETS, INC.; RANDALL=S PHARMACY #57, in its Assumed or Common Name; and
ELIZABETH BARNETTE

 PRICHARD (PLOCH), R.Ph., Individually and in
Her Assumed or

Common Name, Appellees

 



 

On Appeal from the Probate
Court Number One

Harris County, Texas

Trial Court Cause No. 309036-401

 



 

M E M O R A N D U M   O P I N I O N








In this wrongful death suit, the McCluskey
family appeals from a take-nothing judgment in favor of appellees.  In two points of error, appellants argue the
trial court erred in: (1) denying their challenges for cause against five
venire members; and (2) excluding the deposition testimony of one of appellees= expert
witnesses.  We affirm.

Robert
McCluskey, Sr. suffered from Chronic Obstructive Pulmonary Disease.  Dr. Cynthia Sloan, who had no knowledge of
McCluskey=s pulmonary disease, prescribed Inderal,
generically known as Propranolol, for an unrelated problem.  McCluskey had the prescription filled at a
Randall=s Food Market
pharmacy.  McCluskey died a few hours
later of cardiac arrest after allegedly taking the medication.  Appellants contend McCluskey=s death was
directly attributable to the medication.

Appellants
originally sued Dr. Sloan, Randall=s Food Market,
Randall=s pharmacy, and
Randall=s pharmacist,
Elizabeth Ploch.  However, appellant=s subsequently
non-suited Dr. Sloan.  Because there is
some evidence that Randall=s, unlike Dr.
Sloan, was aware of McCluskey=s pulmonary
disease, appellants asserted at trial that Randall=s and its
pharmacist were negligent in filling the prescription Propranolol.  Randall=s and Ms. Ploch
subsequently filed third-party claims against Dr. Sloan but these claims were
later dismissed on summary judgment.  Thus,
the cause went to trial only on 
appellants= claims against Randall=s and Ms.
Ploch.  The jury found no negligence on
the part of Randall=s, its pharmacy, or its pharmacist.

Challenges for Cause

In their first point of error, appellants
claim the trial court erred in denying their challenges for cause against five
venire members.  Specifically, they claim
that Jurors 8, 14, 15, 21, and 36 were prejudiced as a matter of law and that
the trial court=s attempts to rehabilitate these jurors
were unavailing.  Appellants further
argue that once a venire person shows prejudice, that person may not be
rehabilitated.  Appellees contend that
appellants failed to properly preserve error by not exercising their challenges
for cause before exercising their peremptory strikes according to the
requirements of Hallett v. Houston Northwest Medical Center, 689 S.W.2d
888, 889 (Tex. 1985).








The record reflects that during voir dire,
appellants= attorney questioned the venire members
about prejudices they might have in the case. 
The examination included questions about non-economic damages, the
sufficiency of cumulative evidence, and the absence of Dr. Sloan as a party to
the lawsuit.  At the end of voir dire,
the court asked both parties to submit their challenges for cause.  Appellants requested the trial judge to eliminate
eighteen panel members for cause.  The
trial court summarily granted several challenges, questioned several venire
persons at greater length, and eventually struck thirteen of the eighteen
members challenged by appellants.  Thus,
five of the eighteen panel members sought to be excluded for cause by
appellants continued on the panel. 
Thereafter, at the close of voir dire, while appellants were turning in
their peremptory strikes, they objected to the court=s refusal to
strike these five venire members.  The
trial court overruled the objection.

In Hallett, the Texas Supreme Court
established the steps necessary to preserve error when a trial court
erroneously refuses to strike a juror for cause.  689 S.W.2d at 889B890.  Before exercising its peremptory challenges,
the complaining party must advise the trial court: A(1) that she would
exhaust her peremptory challenges; and, (2) that after exercising her
peremptory challenges, specific objectionable jurors would remain on the jury
list.@  Id.  Without providing this detailed objection, the
complaining party waives any error.  Id.  Furthermore, the supreme court specifically
cautioned that Athe complaining party waives any error by
not timely bringing such error to the attention of the trial court prior to
making his peremptory challenges.@  Id. (emphasis added); see also Operation
Rescue‑National v. Planned Parenthood of Houston, 937 S.W.2d 60, 69
(Tex. App.CHouston [14th Dist.] 1996), aff'd as
modified on other grounds, 975 S.W.2d 546 (Tex. 1998); Brown v.
Pittsburgh Corning Corp., 909 S.W.2d 101, 102 (Tex. App.CHouston [14th
Dist.] 1995, writ denied).  Therefore,
the complaining party must make the detailed Hallett objection before
exercising its peremptory challenges.  Operation
Rescue‑National, 937 S.W.2d at 69; Brown, 909 S.W.2d at 102; Beavers
v. Northrop Worldwide Aircraft Servs., Inc., 821 S.W.2d 669, 673 (Tex. App.CAmarillo 1991,
writ denied).








To prevail on
appeal, the record must clearly demonstrate the objection was made before the
party exercised its peremptory strikes.  See
Tex. R. App. P. 33.1
(appellant must present a record sufficient to show a timely objection).  If the record does not clearly reflect that
the Hallett objection was made before the peremptory strikes were
delivered to the court, any complaint regarding the failure to strike for cause
is waived.  Brown, 909 S.W.2d at
104 (holding where the timing of the objection for cause is unclear, no error
is preserved); see also Born v. Virginia City Dance Hall and Saloon,
857 S.W.2d 951, 955 (Tex. App.CHouston [14th
Dist.] 1993, writ denied) (explaining that appellants preserved nothing for
review where they failed to present a record showing when they objected to the
court=s denial to strike
for cause).  Therefore, our focus on
review is the timing of appellants= Hallett objection
versus the exercise of appellants= peremptory
strikes.  Brown, 909 S.W.2d at
103.

Here, the record reflects the following dialogue:

[The parties finished questioning
the jury panel and the court excused the jurors for a short recess.]

THE COURT: Go ahead.

MR. EDWARDS [Counsel for
Appellants]: Come now Plaintiffs in this case and prior to the turning in of
the jury strikes by the Plaintiffs and prior to B actually we are going to turn
ours in B after we have turned in our
strikes and before
the Defendant has turned in their strikes, or at least before I have seen their
strikes, we object to the rulings of the Court with respect to Juror=s Numbers 8, 15, 21, 14, and 36, because each of those perspective
jurors respectively testified on direct voir dire examination that each had a
prejudgment or prejudice against a portion of the Plaintiff=s case and it was error ... not to
strike them ....@(emphasis added).

[Mr. Edwards continued making the
objection, which the court subsequently overruled.]

 








Appellants timely moved to strike numerous
jurors for cause.  However, our focus on
appeal is whether appellants= Hallett objection
was timely in relation to the exercise of their peremptory challenges.  Brown, 909 S.W.2d at 103.  Appellants argue their objection was made Aprior to the
turning in of the jury strikes.@  They also contend the trial court Aclearly understood@ they were turning
in their peremptory strikes for the purpose of moving the trial court to reconsider
its ruling and that the strikes were Asubject to@ the family=s request that the
court reconsider their challenges for cause. 
The record does not support appellants= contentions.  To the contrary, it seems to indicate
appellants made their Hallett objection after they had turned in
their peremptory strikes.[1]  At best, the record is unclear as to the
exact timing of appellants= objection in
relation to the delivery of their peremptory strikes.  Where the record is not clear, it would be
inappropriate for this court to draw inferences as to the exact timing of the
objection and the peremptory strikes.  Brown,
909 S.W.2d at 104.  Furthermore, it was
appellants= responsibility to present this court with
a record that demonstrates their objection was timely.  Tex.
R. App. P. 33.1;   Brown,
909 S.W.2d at 104.  The record before
this court does not do so.  As such,
appellants have presented nothing for review, and their first point of error is
overruled.

Exclusion
of Expert Testimony








Randall=s designated Dr.
Mark Thornton as an expert witness to bolster its third-party claims against
Dr. Sloan.  When appellant=s non-suited Dr.
Sloan, Randall=s decided it no longer needed Dr. Thornton=s expertise or
testimony.  Appellant=s, however, sought
to introduce Dr. Thornton=s deposition under the theory that it
constituted an admission of a party opponent. 
The trial court excluded the testimony, and appellants contend in their
second point of error that the trial court erred in so ruling.

An admission by a party opponent is a
statement offered against a party, made by the party=s agent or servant
concerning a matter within the scope of the agency or employment.  Tex.
R. Evid. 801(e)(2)(D).  It is an
exclusion to the hearsay rule.  Id.;
State v. Buckner Const. Co., 704 S.W.2d 837, 846 (Tex. App.CHouston [14th
Dist.] 1985, writ ref=d n.r.e.). 
In order to admit a statement as an admission by a party opponent, the
proponent of the statement must first establish the agency relationship
existed.  Buckner Const. Co.,
704 S.W.2d at 846 (citing Texas Gen. Indem. Co. v. Scott, 253 S.W.2d 651,
655B56 (1952)).

Appellants rely on Yarbrough=s Dirt Pit, Inc.
v. Turner, 65 S.W.3d 210 (Tex. App.CBeaumont 2001, no
pet.), for the proposition that all testimony of an opposing party=s expert is an
admission by a party opponent.  We are
unwilling to accept this proposition and are not persuaded by Yarbrough=s rationale.  In that case, the Ninth Court of Appeals held
that Aa conclusion of an
expert witness hired by an opposing party to speak on the subject matter on
behalf of the party opponent is admissible against the party opponent ....@  65 S.W.3d at 214.  The court reasoned that the conclusion of an
expert witness is Asimilar to@ an admission by a
party opponent because the expert is Aspecifically
authorized to speak on behalf of [the party opponent].@  Id. (citing Tex. R. Evid. 801(2)). 
However, to hold that all statements made by an expert witness are
admissions of the party who called the expert is to misconstrue the rules of
evidence, the law of agency, and the purpose behind calling expert
witnesses.  








Texas Rule of Evidence 801(2) states that,
to be an admission, a statement must be made by a party=s agent or
servant.  Tex. R. Evid. 801(2). 
A person is not an agent or servant unless he is subject to another
party=s control.  Daily Int'l Sales Corp. v. Eastman
Whipstock, Inc., 662 S.W.2d 60, 64 (Tex. App.CHouston [1st
Dist.] 1983, no writ) (explaining that even when a person acts for or on behalf
of another, if that person is not under the other=s control, he is
not an agent); Restatement (Second) of
Agency ' 1 cmt. e (1958) (A>Agent= is a word used to
describe a person authorized by another to act on his account and under his
control.@) (emphasis added).  Therefore, absent proof of control, there is
no agency.  Webster v. Lipsey, 787
S.W.2d 631, 635 (Tex. App.CHouston [14th
Dist.] 1990, writ denied).

Although an expert witness may be hired by
one party to testify on that party=s behalf, rarely
will an expert agree to be under the party=s control with
respect to his or her testimony.  In
fact, the Rules of Evidence require the expert to testify about his or her own
expert opinion.  See Tex. R. Evid. 602 (requiring personal
knowledge for a witness to be competent to testify); see also Tex. R. Evid. 702 (explaining that a
witness must be qualified by special knowledge, skill, or experience to testify
as an expert); Tex. R. Evid. 703
(establishing the bases of opinion testimony by experts).  Furthermore, the premise behind calling an
expert witness is to give an opinion in the witness= particular field
of expertise.  Theoretically, the opinion
is to be impartial, i.e., it is to be based on the expert=s special
knowledge, skill, or experience.  See Tex. R. Evid. 702.  This specialized opinion cannot be imputed to
the party who called the expert to testify. 
In fact, there may be instances where a party disagrees with the
testimony of an expert the party itself called.








The testimony of an expert witness should
not, ipso facto, be deemed an admission of the party who originally sought
the expert=s opinion. 
This is not to say, however, that the testimony of an expert witness may
never be admissible as the admission of a party opponent.  For example, appellants also rely on Vector
Indus., Inc. v. Dupree, 793 S.W.2d 97 (Tex. App.CDallas 1990, no
writ), and  Buckner Const. Co.
in claiming Dr. Thornton=s testimony is admissible against
appellees.  In both cases, however, the
witness whose statement was being offered at trial actually was an agent or
employee of the party opponent.  In Vector
Indus., the court allowed an accountant=s statement about
a company=s value to be used against the
company.  793 S.W.2d at 103.  The court reasoned that the valuation
statement constituted an admission by the company.  Id. 
However, the accountant was an employee of the company at the time
the statement was made.  Id. at
100.  Furthermore, he made the valuation
statement, upon request of the company, as a regular part of his employment
well before any legal proceedings had transpired.  Similarly, in Buckner Constr. Co.,
this court allowed the statement of an auditor employed by the State of Texas
to be used as an admission by the State. 
704 S.W.2d at 846.  After the
plaintiff sued the State on a contract claim, the State sent an auditor to
review the plaintiff=s financial records.  Id. 
While examining the records, the auditor made a statement the plaintiff
later sought to introduce at trial.  Id.  The trial court allowed the statement despite
the State=s objection that the statement was hearsay.  Id. 
This court reasoned that A[c]learly [the
auditor] was acting as an agent of the State at the time he was auditing
[plaintiff=s] books@ and, as such,
held the auditor=s statement was an admission of a party
opponent.  Id.

Here, however, appellants sought to
introduce testimony from a witness who had no connection to appellees other
than he had been retained as an expert witness to testify at trial about his
professional opinions.  Unlike the
accountant in Vector Indus. and the auditor in Buckner Constr. Co.,
Dr. Thornton was not an employee of Randall=s.  Appellants have put forth no evidence that an
agency relationship existed, and, as such, Dr. Thornton=s statements
cannot be attributed to Randall=s.  See Texas Comm=n on Human Rights
v. Kinnear, 986 S.W.2d 828, 833B34 (Tex. App.CBeaumont 1999)
(upholding a decision to exclude expert testimony where the expert was not
shown to be an agent), rev=d in part on other
grounds,  14 S.W.3d 299 (Tex. 2000); Handel
v. Long Trusts, 757 S.W.2d 848, 850B51 (Tex. App.CTexarkana 1988,
writ ) (refusing to admit testimony as an admission by a party opponent where
the record did not show the extent of an agency relationship).








When appellants non-suited their claims
against Dr. Sloan, the subject matter over which Dr. Thornton was asked to give
his opinion became moot.  Subsequently,
Dr. Thornton was not called at trial, and, therefore, the trial court excluded
his testimony on hearsay grounds.  The
trial court had a legitimate basis for its ruling, and we cannot say the trial
judge abused his discretion in excluding the testimony.  See N. Am. Refractory Co. v. Easter,
988 S.W.2d 904, 916 (Tex. App.CCorpus Christi
1999, pet. denied).  Accordingly,
appellants= second point of error is overruled.

The judgment of the trial court is
affirmed.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

 

 

Judgment
rendered and Memorandum Opinion filed October 19, 2004.

Panel
consists of Chief Justice Hedges and Justices Hudson and Fowler.











[1]  The record
presented to us reflects appellants= counsel
stating, Aprior to B actually we are going to turn
ours in B after we have turned in our
strikes ... we
object to the [court=s refusal to strike for cause].@ It could be inferred from the record that appellants were handing in their
list of peremptory strikes while making the required Hallett objection.  In fact, appellants argue in their reply
brief that they were turning in their
peremptory strikes at the same time as making their Hallett objection.  However,
a party exercises its peremptory strikes when it turns in a written list of
strikes to the court.  Brown, 909 S.W.2d at 102B04; Lopez v. S. Pac.Transp. Co.,
847 S.W.2d 330, 333 (Tex. App.CEl Paso 1993, no writ). 
Hallett and its progeny clearly dictate that a party must
object to the trial court=s refusal to strike for cause before the party
exercises its peremptory strikes.  Therefore,
appellants should have made their Hallett objection before, not
contemporaneously with, turning in their list of peremptory strikes to the
court. Furthermore, this is consistent
with the rationale of the supreme court=s ruling
in Hallett.  Hallett explained
that the objection must be made while the court still has the ability to correct any
error.  689 S.W.2d at 890.  If a
party is allowed to submit its peremptory strikes Asubject to@ or
contemporaneously with its objection, as appellants argue, this would deny the
opposing party the opportunity to intelligently make its own peremptory
strikes.  Because the opposing party does
not know which jurors are being struck for cause, it may be forced to use
peremptory strikes without knowing who remains on the venire.  This does not provide the court an
opportunity to correct any error but, rather, further substantiates objectionable
error.